IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| CHRISTINE F. RADELINE )<br>)<br>   Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>MARTIN J. GRUENBERG )<br>   Chairman, Federal )<br>   Deposit Insurance )<br>   Corporation, )<br>)<br>   Defendant. )<br>) | Civil Action No. 1:15-cv-957 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant Martin J. Gruenberg's, Chairman of the Federal Deposit Insurance Corporation ("FDIC") ("Defendant") Motion for Summary Judgment.

Plaintiff Christine F. Radeline ("Plaintiff" or "Radeline") was a grade 14 Senior IT Specialist within the Division of Information Technology ("DIT") in the FDIC. This is a Title VII case in which the issue is whether the Plaintiff was subjected to sex discrimination when in 2012, she was not promoted to a grade 15 position following a desk audit.

A federal employee may generally be promoted by one of three ways: 1) a competitive posting; 2) without further competition while occupying a career ladder position; or 3) the

upgrading of a position based on accretion of duties as determined by a desk audit. A desk audit is a fact-finding method in which Human Resources ("HR") conducts a review of a position by obtaining information related to the duties performed. The process involves an interview with the employee and the supervisor, and a review of various work products. The process ultimately determines the proper title, occupational series, and grade for the position. Position classification standards issued by the Office of Personnel Management ("OPM") are used as the benchmarks for the overall analysis.

On June 26, 2012, Plaintiff submitted a Desk Audit request of her grade 14 position as a Senior IT Specialist. HR Classifier Mark Pinkney was assigned the desk audit. After interviewing and corresponding with both Radeline and her supervisor Brian Seborg, Pinkney issued his 10-page Position Classification Audit Report on October 24, 2012. On October 29, 2012, Radeline was given a copy of the report and informed of the findings.

The report detailed the procedural history of the audit, outlined the position duties, described the relevant OPM classification standards, analyzed each of the nine classification standards, assigned a level rating for each factor with explanations detailing his reasoning, and concluded

that Radeline's position was properly classified at the grade 14 level.

Radeline appealed the decision and challenged three of the nine classification factors: Factor 1 (Knowledge); Factor 5 (Scope & Effect); and Factor 6 (Personal Contacts). The grade 14 classification program manager Robert Cannon conducted a full audit of the work Radeline actually performed in the context of the three classification factors that were challenged in the appeal. Cannon interviewed Radeline and Seborg, and corresponded regularly with them both throughout the appeal audit. On March 14, 2013, Cannon issued a 16 page final report detailing the same subjects covered in the original report. Cannon concluded that Radeline's position was properly classified at the grade 14 level and that the original audit was correct. Plaintiff now brings the instant action claiming Title VII sex discrimination.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is not a "disfavored procedural shortcut, but rather [an] integral part of the Federal Rules ... which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Id.

3

While the Court will view the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[I]t is ultimately the nonmovant's burden to persuade us that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." Design Res., Inc. v. Leather Indus. Of Am., 789 F.3d 495, 500 (4th Cir. 2015) (citations and quotations omitted).

Title VII claims are subject to the familiar burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. Ennis v. Nat'l Assoc. of Bus., 53 F.3d 55, 58 (4th Cir. 1995). If she succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions Id. This is a burden of production, not persuasion. Id.; see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993). Then, to overcome the defendant's nondiscriminatory reasons, the plaintiff must prove by a preponderance of the evidence that those reasons were not the

4

actual reasons, but were a pretext for discrimination. Reeves v. Sanderson Plumbing, Inc., 530 U.S. 133, 143 (2000).

In Haywood v. Locke, the Fourth Circuit affirmed the District Court's grant of summary judgment in favor of the federal agency because the plaintiffs failed to establish a *prima facie* case of discrimination when they failed to establish that similarly situated comparators were treated more favorably than them. 387 Fed. Appx. 355 (4th Cir. 2010), cert. denied 562 U.S. 1219 (2011). Haywood explained that to establish a *prima facie* case, a plaintiff must show that 1) she is a member of a protected class; 2) who applied for a promotion for which she was qualified; 3) was denied the promotion despite her qualification; and 4) under circumstances that give rise to an inference of discrimination. Id., at 358.

When a plaintiff bases her claim upon a comparison to an allegedly similarly situated employee, as Radeline does here with the four male alleged comparators, the validity of her *prima facie* case depends upon whether that comparator is indeed similarly situation. Id., at 359. It is the plaintiff's burden to demonstrate that she is similar in all relevant aspects to the comparators, including evidence that the employees dealt with the same supervisors, were subject to the same standards, and had enough common features between them to allow for a meaningful comparison. Id., at 360. The Fourth Circuit has also

5

held that a plaintiff's own speculation or naked opinion of discrimination is insufficient to sustain a *prima facie* case. Nguyen v. Dalton, 94 F.3d 642, 1996 WL 469904 at *3 (4th Cir. 1996) (citing Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

Certain principles apply when determining whether a plaintiff can prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are false and simply a pretext for discrimination. Courts must not sit as "a super-personnel department weighing the prudence of employment decisions made by the defendants." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005). It is not the purpose of the courts to decide whether an employment decision was wise, fair, or even correct so long as it was not based on an unlawful motive. Hawkins v. PepsiCo, 203 F.3d 274, 279 (4th Cir. 2000); see also Smith v. University of North Carolina, 632 F.2d 316, 346 (4th Cir. 1980) (Title VII does not require that employment decisions be rational, wise, or well-considered, only that it be nondiscriminatory). Further, Title VII does not empower courts to second-guess employment decisions, and it is the employer's perception of performance or qualifications that counts, not the plaintiff's or the plaintiff's co-workers. Jiminez v. Mary Washington College, 57 F.3d 369, 383 (4th Cir. 1995) (holding that Title VII is not a

6

vehicle for substituting judgment of the court for that of employer; the crucial issue is "an unlawful discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment").

Radeline identifies four male comparators who were promoted to a grade 15 position whom Radeline believes were treated more favorably than her because of her sex. The four male comparators are: 1) Richard Fronck; 2) Charles Vedaa; 3) Ramesh Balasubramanian; and 4) Steve Lott. The record shows that all four of these male comparators were promoted though an open and competitive process. In each case, vacancy announcements were posted, applications were received and evaluated, names were compiled and forwarded to selecting officials, and structured interviews were conducted. After this lengthy process, justifications were drafted and the four males were promoted. All four male comparators applied for the posted positions – Radeline did not.

Further, different selecting officials were involved, the jobs were in three different sections than Radeline's, and involved different job duties. see e.g. Heyward v. Monroe, 166 F.3d 332 (4th Cir. 1998) ("if different decision makers are involved, employees are generally not similarly situated"). Roderick Toms from Security Protection Engineering Section ("SPES") selected Fronck and Vedaa for a highly technical

7

security job. Brian Seborg from Security Policy and Compliance Section ("SPCS") selected Balasubramanian for a highly technical security architecture job. Ned Goldberg from Information Security and Privacy Staff ("ISPS") selected Lott for a privacy program manager job. All four male comparators were qualified for the posted positions, in which hundreds of people applied. Radeline admits that she was not qualified for any of the posted positions nor did she apply for any of them.

   Fronck, Vedaa, and Balasubramanian never underwent a desk audit. They were promoted solely through the competitive process. Lott did request a desk audit, and different classifiers Delores Montgomery and Sharon Gibbons determined that Lott's job was properly classified at the grade 15 level. However, they also determined that Lott's case did not meet the exception to competitive procedures following a desk audit as identified in the FDCI's Merit Promotion Plan. As such, competition was necessary and a vacancy was announced. Lott then applied, was interviewed, and was eventually selected. Again, Radeline admits she was not qualified for nor did she apply for this vacancy.

   Radeline fails to show a *prima facie* case of discrimination and fails to show that the four male comparators were similar in all relevant aspects as required by the law.

8

Even if Radeline could establish a *prima facie* case of discrimination, summary judgment is still appropriate because Radeline cannot demonstrate that the FDIC's legitimate, nondiscriminatory reasons for not promoting her were pretextual. According to Radeline's deposition, she simply disagrees with the conclusions of Pinkney and Cannon that her position was correctly classified at a grade 14 level. A mere disagreement is not evidence of sex discrimination. Further, Radeline's own perceptions of her qualifications are immaterial, and this Court will not substitute its own judgment in place of the business decision of the FDIC.

In Radeline's deposition, she states that she believed Pinkney and Cannon honestly believed her position was appropriately classified at a grade 14 level. She also says that Pinkney "may have" discriminated against her and that Cannon "may or may not have" discriminated against her. She testified that neither Pinkney nor Cannon ever said or did anything that suggested sex was a factor in their decisions. Radeline provides no further factual basis to her claim other than mere speculation. Speculation is not enough to show pretext.

Radeline further asserts that Ned Goldberg "hijacked," "sabotaged," and "torpedoed" the desk audit. However, there is no evidence in the record to show that Goldberg ever spoke to or was interviewed by either Pinkey or Cannon. In fact, Goldberg

9

supported Radeline's then grade 13 position that resulted in Radeline being promoted to a grade 14. There is simply no evidence of pretext.

In sum, Radeline does not make a *prima facie* case of sex discrimination, does not demonstrate that the four male comparators were similarly situated in all relevant aspects, and does not show any evidence of pretext.

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted.

An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
March 28, 2016